IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOE 1, et al, | ) |
| Plaintiffs, | ) 2:14-cv-00196 |
| v. | ) Judge Mark R. Hornak |
| COUNTY OF FAYETTE, et al, | ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Before the Court are the Motions to Dismiss Plaintiff's[1] First Amended Complaint filed by Defendants County of Fayette and Vince Zapotosky in his individual capacity, ECF No. 35, and Angela Zimmerlink in her individual capacity, ECF No. 37, along with filings in support and in opposition thereto, ECF Nos. 36; 38; 39; 40; 41; 42; 45; 48. Based on the Court's consideration of the papers filed and the matters presented at the hearing/argument on October 9, 2014 in open court as to the Defendants' Motions to Dismiss, the Court will grant the Motion to Dismiss of Defendants County of Fayette and Zapotosky and dismiss the claims against those Defendants with prejudice, but will deny Defendant Zimmerlink's Motion to Dismiss.

### I. BACKGROUND

This Court previously granted Defendants' Motions to Dismiss the Complaint in its entirety by written Memorandum Opinion and Order, but gave Plaintiff leave to amend with regard to her alleged claims against Defendant County of Fayette and Defendant Zimmerlink. ECF No. 25. In the First Amended Complaint ("FAC"), Jane Doe 2 re-asserted her prior claims

---

[1] Plaintiff stipulated during oral argument on October 8, 2014 that Jane Doe 2 is the only Plaintiff in this case and the only one whose rights were allegedly violated. Jane Doe 1's function in this case is solely as a representative of Jane Doe 2, who is a minor child.

1

against Defendants County of Fayette and Fayette County Commissioner Zimmerlink, and also added claims against her fellow Commissioner, Vince Zapotosky, as a named Defendant. ECF No. 29.

According to facts alleged in the FAC, which the Court must assume to be true, Jane Doe 1 spoke to Commissioner Zapotosky in person on or about June 26, 2012 regarding her belief that Fayette County Children and Youth Services ("CYS") had for years inadequately protected children suspected to be victims of physical and sexual abuse. *Id.* at ¶ 11. Commissioner Zapotosky instructed Jane Doe 1 to email her concerns to him before he could commence an investigation into her allegations. *Id.* at ¶ 14. Jane Doe 1 accordingly sent an email solely to Commissioner Zapotosky documenting several instances of child abuse, many in the somewhat distant past, which she asserted CYS knew about and failed to remedy. *Id.* at ¶ 15. Jane Doe 2, the Plaintiff in this case and Jane Doe 1's adopted daughter, was among the children specifically mentioned in the email as having been "physically and sexually assaulted over and over." *Id.* at ¶ 19; ECF No. 29-1, at 8. In her email, Jane Doe 1 explicitly requested that Commissioner Zapotosky investigate her allegations. ECF No. 29, at ¶ 18; *see* ECF No. 29-1, at 9 ("I am begging you to look into both of these cases and find out why things happened the way they did. Please hold CYS accountable for their ignorance and incompetency [sic]."). Her email also specifically suggested that changes in the law might be necessary to accomplish her goals. *See* ECF No. 29-1, at 9 ("[T]he laws that they [who work for CYS] hide behind must be changed!").

The FAC now avers that despite this request for government action, Jane Doe 1 expected Commissioner Zapotosky to keep the sensitive contents of the email confidential, even though the email does not say that. ECF No. 29, at ¶ 20; *see generally* ECF No. 29-1. Commissioner Zapotosky forwarded the email to, and requested a meeting with, various government officials

including one other Fayette County Commissioner,[2] the CYS Director, the CYS Solicitor, the County District Attorney, and "various legislators, staffers, and administrative assistants." ECF No. 29, at ¶ 16. Additional emails were then exchanged amongst Jane Doe 1 and those others to schedule a meeting to discuss the allegations.[3] *Id.* at ¶ 22.

On or about August 1, 2012, Commissioner Zimmerlink, who was not on the original email chain, allegedly forwarded a copy of Ms. Doe's email to reporters at the Herald Standard and Tribune Review. ECF No. 29, at ¶ 23; ECF No. 29-1, at 2–5. The newspapers ultimately did not publish a story or otherwise disseminate the sensitive subject matter to the public. ECF No. 29, at ¶¶ 24–25.

## II. <u>LEGAL STANDARD</u>

When assessing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must conduct the three-part inquiry of "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Courts must accept the veracity of all well-pleaded facts, but need not credit legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). Courts "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211

---

[2] While the Complaint specifically alleges Defendant Zapotosky sent the email to "the other Fayette County Commissioners," ECF No. 29, at ¶ 16, an examination of the email attached as an exhibit to the FAC shows that Defendant Zimmerlink was not on the original email chain, ECF 29-1, at 2–5.

[3] At oral argument, Plaintiff's and Defendants' counsel agreed that Jane Doe 1's email address was present as both sender and recipient on the relevant email chain. The email attached as an exhibit to the Complaint also shows this, although Ms. Doe's email address is redacted in the exhibit to protect Jane Doe 2's identity from disclosure. ECF No. 29-1. Both sides recognized during oral argument that the redacted email address belongs to Jane Doe 1. The email chain also reflects an email sent by Jane Doe 1 on July 23, 2012 again requesting a meeting and stating, "I am prepared to discuss with the media if need be." *Id.* at 3–4. At no point in that flurry of emails did Jane Doe 1 raise an alarm about who was included on the chain, nor as to Zapotosky's forwarding her original email to others.

3

(quoting *Iqbal*, 129 S. Ct. at 1950). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949). In sum, the allegations of a valid complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

## III. **DISCUSSION**

Jane Doe 2 brings this case under 42 U.S.C. § 1983, which requires plaintiffs to allege a deprivation of a federal right caused by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Therefore, courts considering § 1983 claims must first determine whether any federal right has in fact been violated.[4] *Nicini v. Morra*, 212 F.3d 798, 806 (2000) (en banc). With regard to the alleged deprivation of a right, Jane Doe 2 asserts in her FAC that Defendants violated her constitutional right to privacy, caused unreasonable publicity of her private life, and violated her substantive due process rights, alleging each violation under the Fourth, Ninth, and Fourteenth Amendments.[5] ECF No. 29, at ¶ 40.

---

[4] If plaintiffs fail to adequately plead the deprivation of a constitutional right, the questions of whether government officials are entitled to qualified immunity and whether municipality liability attaches are irrelevant. *See Kaucher v. Cnty. of Bucks*, 455 F. 3d 418, 423 n.2 (3d Cir. 2006) ("[T]he initial inquiry under the doctrine of qualified immunity and the doctrine of municipal liability asks whether the plaintiff asserted a violation of a cognizable constitutional right.").

[5] Our Circuit has recognized the lack of analytical distinction between the recognition of the constitutional right to privacy in the Fourth and Fourteenth Amendments. *See Doe v. Luzerne Cnty.*, 660 F.3d 169, 176 n.5 (3d Cir. 2011) ("[While the Sixth Circuit may locate the right to privacy in the Fourth Amendment—and we . . . locate this right within the Fourteenth Amendment—the contours of the right appear to be the same."). The Circuit has also assessed claims such as that alleged under the general rubric of recognizing constitutional privacy rights rather than conducting distinct analyses of each theory. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 179 (3d Cir. 2005) ("Plaintiffs asserted constitutional violations based on Plaintiffs' right under the Fourth and Fourteenth Amendments to be free from unlawful intrusion into the household, Plaintiff Parents' substantive due process right under the Fourth and Fourteenth Amendments to raise their children as they see fit and Plaintiffs' right under the Fourth and Fourteenth Amendments to privacy. Although denoted as three separate constitutional claims, we, like the District Court, interpret these claims to invoke the two recognized strands of the privacy right, and will analyze them accordingly."); *see also Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (addressing as one claim plaintiff's right to privacy allegations under the Ninth and Fourteenth Amendments). The Court will therefore follow suit and address Plaintiff's various claims collectively under the rubric of a constitutional right to privacy. Moreover, the

## A. Constitutional Right to Privacy

There are two types of privacy interests protected by the Fourteenth Amendment: one in the "individual interest in avoiding disclosure of personal matters," and the second in the "interest in independence in making certain kinds of important decisions."[6] *Doe v. Luzerne Cnty*, 660 F.3d 169, 175 (3d Cir. 2011) (internal quotation marks and citations omitted). This case deals solely with the former interest in avoiding disclosure of intimate matters.[7] Alleged violations of that right are assessed through a two-step test. First, courts assess "whether [the information] is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 179 (3d Cir. 2005) (quoting *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 112 (3d Cir.1987)). Second, courts balance the privacy interest against the public or governmental interest in disclosure.[8] *Id.* at 179–80. Our Circuit has also explained that the determination is necessarily fact-intensive and context-specific, and "unfortunately, bright lines generally cannot be drawn."

---

alleged violation stemming from "unreasonable publicity concerning one's private life," ECF No. 29, at ¶ 40(a)(II), is a state law tort rather than a constitutionally recognized right. *Flynn v. Borough of Jermyn*, No. 3: 12-2559, 2013 WL 4520843, at *4 (M.D. Pa. Aug. 26, 2013). Thus, the Court will refrain from addressing it outside of the context of the constitutional right to privacy outlined below.

[6] "The first category is a right to confidentiality, and the second category is a right to autonomy." *Malleus*, 641 F.3d at 564.

[7] While Jane Doe 1 does not specify which category Jane Doe 2's claim falls under, the latter interest deals with important decisions such as "family relationships[] and child rearing," which would require an allegation that Jane Doe 1's rights to decide matters relating to her family were violated. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 179 (3d Cir. 2005) (internal quotation marks and citation omitted). As noted above, Jane Doe 1 is only participating in this action on behalf of Jane Doe 2, and such an allegation is wholly absent from the FAC. Moreover, the information contained in the email does not relate to "autonomy and independence in personal decision-making," *Malleus*, 641 F.3d at 565, and thus the Court need address only the first type of privacy protections.

[8] Only if courts first find a privacy interest implicated must they then balance the opposing interests to decide whether disclosure was justified. *Doe v. Se. Pa. Transp. Auth. (SEPTA)*, 72 F.3d 1133, 1137 (3d Cir.1995) ("As a preliminary matter, [a] court must decide if a person's [personal information] is within the ambit of information protected by the Constitution. If there is no right to privacy, [the] inquiry stops.").

*Doe*, 660 F.3d at 176. Notably, the constitutional right to privacy is not limited to adults, but covers minors as well. *C.N.*, 430 F.3d at 179.

With regard to the first part of the test, the Third Circuit has not squarely addressed the issue at hand of whether a minor has a constitutional right to privacy in a detailed email identifying her by name and alleging she has been sexually and physically abused. However, acknowledging that the right to privacy "protects against public disclosure [of] only highly personal matters representing the most intimate aspects of human affairs," *Doe*, 660 F.3d at 176 (internal citations omitted), Circuit precedent recognizes three general categories of information as protected under the constitutional right to privacy: medical records, financial information, and information relating to sexuality, *Malleus*, 641 F.3d at 565–66 (collecting cases). Moreover, "[t]he cases in which a disclosure-based privacy violation has been found involve situations where there was either actual identification or the disclosure of identifying information such as would allow the individual to be identified and ultimately connected to his or her private information." *C.N.*, 430 F.3d at 180. Not only does the information at issue in this case pertain to a minor's sexuality, but the email specifically identifies Jane Doe 2, thereby connecting her to the private information. The Court therefore concludes that Jane Doe 2 had a privacy interest in the sensitive information, notably her identity and the allegation that she is a victim of sexual abuse, contained in the email.

Defendants cite *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202 (3d Cir. 1991), to support their argument that Jane Doe 2 can have no constitutionally protected right to information divulged on her behalf as part of a request to investigate allegations of abuse. ECF No. 36, at 14–15; ECF No. 38, at 5–6. While the court held in *Scheetz* that plaintiffs had no reasonable expectation of privacy in statements of adult domestic violence made to the police and included in a police report, *id.* at 207, that case is distinguishable. First, criminal and police

reports are "inherently public" records. *Nunez v. Pachman*, 578 F.3d 228, 232 (3d Cir.2009). As the *Scheetz* court explained, the fact that police did not need the complaining witness's permission to bring charges meant that any information disclosed could ultimately wind up as part of the public record. *Scheetz*, 946 F.2d at 207. By contrast, an email containing sensitive information about instances of child abuse sent to a county commissioner is not inherently of a public nature, even when sent to a government official so that he might investigate the situation.[9]

Second, as Defendants readily admit, *Scheetz* dealt with allegations of domestic violence made by an adult on her own behalf. Here, Ms. Doe is alleging impermissible dissemination of sexual abuse of a minor on behalf of her child. The Court agrees with Ms. Doe to the extent that the law simply treats children differently when it comes to maintaining the confidentiality of their identities, whatever the context. *Cf.* Fed. R. Civ. P. 5.2(a) (filings with the court including the name of an individual known to be a minor warrants identification solely by that minor's initials); *Winkler v. Grant*, 370 F. App'x 145, 147 (2d Cir. 2010) (finding abuse of discretion in the district court's failure to protect the identities of minors named in the record). Minor children are invariably afforded greater protection of their private information than adults, rendering the situation in *Scheetz* not dispositive in this context.

Third, information pertaining to sexual abuse of children is plainly within the category of matters relating to intimate details of sexuality which the Third Circuit has recognized as warranting a privacy interest. *Malleus*, 641 F.3d at 565; *C.N.*, 430 F.3d at 179. Indeed, the Court concludes that this type of sensitive material is likely entitled to an even greater expectation of privacy than the Third Circuit has explicitly found with regard to disclosure of a minor student's pregnancy status, *C.N.*, 430 F.3d at 179 (citing *Gruenke v. Seip*, 225 F.3d 290

---

[9] We are at the Motion to Dismiss stage. Thus, while the Court could conclude as a matter of law in any case that police reports are "inherently public," the Court cannot conclude that the email at issue is not entitled to privacy protection as a matter of law. Further factual development is warranted to determine whether such an email is public in nature in the context of this case.

7

(3d Cir. 2000)), or a plaintiff's sexual orientation, *Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d Cir. 2000). Therefore, the Court concludes that Jane Doe 2 presumptively had a reasonable expectation of privacy in the information contained in the email, namely her identity linked with the detailed allegations of her status as a victim of sexual abuse. That conclusion does not ensure the FAC withstands the Motions to Dismiss, however, because the Court must also perform the balancing test to determine if, reading the FAC's facts as true and drawing all reasonable inferences in Plaintiff's favor, the privacy interest alleged is outweighed by the government's interest in disclosure. *C.N.*, 430 F.3d at 179.

Turning to the second portion of the test, the Court must weigh "whether the intrusion into an individual's privacy is justified" using the following factors: (1) "the type of record requested"; (2) "the information [the record] does or might contain"; (3) "the potential for harm in any subsequent nonconsensual disclosure"; (4) "the injury from disclosure to the relationship in which the record was generated"; (5) "the adequacy of safeguards to prevent unauthorized disclosure"; (6) "the degree of need for access"; and (7) "whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access."[10] *Id.* at 179–80. For this second part of the inquiry, the FAC alleges two disclosures: one involving Defendant Zapotosky's alleged conduct in forwarding the sensitive email to other government officials, and one relating to Defendant Zimmerlink's alleged conduct in sending the sensitive email to the reporters.[11] The Court will address each in turn.

---

[10] The first five (5) factors of the test speak to the individual's expectation of privacy and the last two (2) account for the government's interest in disclosure. *Id.* at 181.

[11] All two (2) of them. Given that Jane Doe 1 concedes that Jane Doe 2's name or story was not published by these reporters or their newspapers, one may well wonder what the magnitude of the damages claims could be, other than perhaps for nominal damages alone. If the latter, then even with a punitive damages claim, constrained as it would be by applicable Supreme Court precedent, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), it would not appear, at first blush, that the magnitude of any such recovery would be significant.

In doing so, the Court concludes that assuming the veracity of the facts contained in the FAC, Defendant Zapotosky's limited disclosure to relevant government officials was warranted under the circumstances, whereas Defendant Zimmerlink's disclosure could be found to have been unjustified.

### *1. Disclosure Allegations Against Defendant Zapotosky*

The FAC's allegations regarding Defendant Zapotosky, read in the light most favorable to the Plaintiff, assert that Jane Doe 1 approached Defendant Zapotosky (because of his position as one of three County Commissioners charged with overseeing CYS) about the inadequacies she perceived in CYS procedures and investigations. ECF No. 29, at ¶¶ 11–13. Defendant Zapotosky instructed Jane Doe 1 that he could not conduct a formal investigation into her allegations until she reduced her concerns to writing, which she did and sent to Defendant Zapotosky via email on about June 26, 2012. *Id.* at ¶¶ 14–15. That email, attached as an exhibit to the FAC, contains detailed allegations of physical and sexual abuse of children and closes with Jane Doe 1's request that Defendant Zapotosky "look into both of these cases and find out why things happened the way they did." ECF No. 29-1, at 9. Defendant Zapotosky responded to Jane Doe 1 alone, stating that he would "get [the] ball rolling tomorrow." *Id.* at 8.

From there, the email chain shows, and the parties acknowledged in open Court, that Defendant Zapotosky forwarded the email, along with a request for a meeting to discuss these important issues, to various government actors as well as to Jane Doe 1. *Id.* at 5. The crux of Ms. Doe's claim against Defendant Zapotosky thus seems to be that he disseminated the email containing her specific allegations of child abuse rather than keeping the substance of that email confidential while proceeding to investigate those allegations. Could Defendant Zapotosky have initiated his investigation into Ms. Doe's allegations without forwarding the email containing

those sensitive allegations? Perhaps he could have.[12] But does his failure to do so amount to a constitutional violation? The Court holds that it does not.

Addressing the relevant factors,[13] it is plain that the information contained in the email was of a highly sensitive and personal nature to Jane Doe 2. Moreover, the potential for harm in any subsequent nonconsensual disclosure was great, in that any such disclosure would expand the number of people privy to detailed allegations of sexual abuse pertaining to Jane Doe 2. Additionally, the relationship in which the record was generated was one between a concerned citizen and a county official responsible for overseeing the government agency accused of various failures. That relationship is certainly jeopardized when the official discloses the record to others without the citizen's express consent.

That being said, Defendant Zapotosky's disclosure of the email by forwarding it to government officials with whom he was attempting to meet to address the very issues raised by Jane Doe 1 was justified, given the government's centrally-important interest in investigating allegations of nonfeasance by an agency charged in part with safeguarding children from sexual abuse. This was exactly what Jane Doe 1 wanted Defendant Zapotosky to do. The officials to whom Defendant Zapotosky sent the email were all directly related to the investigation into Jane Doe 1's allegations that Defendant Zapotosky promised to conduct. Further, the Court would be remiss to not recognize that the highly sensitive information contained in the email was transmitted to Defendant Zapotosky by Jane Doe 1 herself.[14] In light of the specific

---

[12] But once the meeting he was arranging convened, no responsible government official could have conducted the investigation Jane Doe 1 sought (including possible legislative changes) without disclosing the specifics of Jane Doe 1's allegations to those other government officials.

[13] Courts need not undertake an exhaustive factor-by-factor assessment in every case, but should rather adapt its analysis to the circumstances presented. *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) ("This list is not exhaustive, and the relevant considerations will necessarily vary from case to case.").

[14] The Court is thus placed in the uncommon position of having the alleged violation of the rights of a minor asserted against government officials by the very person who provided the sensitive information to the government

circumstances in which Defendant Zapotosky obtained the sensitive information and his efforts to limit its dissemination to the relevant government officials in order to perform an adequate investigation into this important issue, the Court concludes that the government interest in Defendant Zapotosky's *limited* disclosure of the email outweighs Jane Doe 2's right to privacy in the information.[15] Thus, the FAC does not state a "right of privacy" claim against Defendant Zapotosky.

### *2. Disclosure Allegations Against Defendant Zimmerlink*

The extent of the FAC's allegations against Defendant Zimmerlink is that on or about August 1, 2012, Defendant Zimmerlink forwarded Jane Doe 1's email containing allegations of child abuse to reporters at the Herald Standard and Tribune Review, although those newspapers did not publish any story in relation to the email and the email's contents were not disseminated to the public. ECF No. 29, at ¶¶ 23–25. The only additional information contained in the FAC relating to Defendant Zimmerlink is in the relevant email chain attached as an exhibit to the FAC, wherein Defendant Zimmerlink replied to those on the chain on August 2, 2012 explaining that she was unavailable for the scheduled meeting because she was not informed of it until the last minute. ECF No. 29-1, at 1.

As the Court explained with regard to Defendant Zapotosky, the privacy interest in the contents of the email disseminated first by Defendant Zapotosky and then by Defendant Zimmerlink was indeed substantial. However, the "degree of need for access" factor tips the scale considerably with regard to the alleged disclosure made by Defendant Zimmerlink. *C.N.*, 430 F.3d at 180. While Defendant Zapotosky sent the email to the government officials who

---

officials in the first place, arguably to induce the very actions that at least Zapotosky took. While this fact does not necessarily waive Jane Doe 2's rights (at least as considered at this stage of the case) or definitionally decrease the legitimacy of her privacy right, it certainly is worthy of note, as those issues may resurface at a later procedural stage.

[15] And, as the resulting email chain reflects, Jane Doe 1 thought so also, as she participated in those exchanges with nary a peep about Zapotosky's actions.

could potentially assist him in the investigation of the allegations made by Jane Doe 1, if the allegations against Defendant Zimmerlink are true, as the Court must assume they are at this stage, the Court is at a loss to identify any governmental need for access that members of the press may have had (at least at that moment) to the specific identity of the victims of alleged abuse that would warrant Defendant Zimmerlink's dissemination of this private information to them in the manner she did.

The Court thus concludes that while Defendant Zapotosky's conduct did not amount to a constitutional violation, the facts alleged plausibly assert such a cause of action against Defendant Zimmerlink, at least at this stage of the proceedings. Therefore, the Court must decide whether Defendant Zimmerlink is entitled to qualified immunity for her conduct.

### B. Qualified Immunity Analysis for Commissioner Zimmerlink

Even though the Court concludes that Defendant Zimmerlink's conduct as alleged in the FAC would amount to a constitutional violation, the question remains whether she is nonetheless protected from liability by the doctrine of qualified immunity. Reading the facts alleged in the FAC as true, the Court concludes that she is not, at least at this point.

As a general matter, government officials are immune from liability for civil damages unless the official's conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, --- F.3d ---, No. 13-3232, 2014 WL 5155213, at *6, (3d Cir. Oct. 15, 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The qualified immunity analysis thus turns on whether (1) the complaint alleges "sufficient facts to establish the violation of a constitutional right," and whether (2) that "right was 'clearly established' at the time of the defendant's actions." *Id.* at *6 (quoting *Pearson*, 555 U.S. at 231). The Court has already explained its reasoning for concluding that Defendant Zimmerlink could be found to have violated Jane Doe

2's constitutional right to privacy in the description of sexual abuse of which she was a victim. Therefore, the Court will now turn to the second prong of the qualified immunity test to determine whether the right was "clearly established."

With regard to the second prong, for Defendant Zimmerlink's actions to fall outside of the qualified immunity doctrine, the law at the time of the incident must have been sufficiently clear such that a reasonable official would know her conduct was unlawful under the circumstances. *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014). The Third Circuit has recently reaffirmed what precedential authority is necessary to determine whether the right at issue was clearly established. *Estate of Lagano*, 2014 WL 5155213, at *6. Refusing to accept a district court's "narrow construction of the right at issue" and "statement that the right was not clearly established," the Court of Appeals explained that plaintiffs need not point to a binding Third Circuit opinion recognizing a long-established right's application in a precisely specific context to overcome a qualified immunity defense. *See id.* at *7 ("[T]he [plaintiff] can overcome [the defendant's] qualified immunity defense without proving that we have previously issued a binding decision recognizing a state-created danger in the context of the disclosure of a confidential informant's status, and the District Court erred in requiring it to do so."). What this all means is that the inquiry focuses not on a "fact-by-fact" match up, but instead on whether the alleged facts fairly fall within the contours of a substantive doctrine of law that itself is clearly established at the time of the alleged conduct.

Defendant Zimmerlink opposes the Third Circuit's own description of the authority necessary to show the law is clearly established, arguing that "[b]ecause the Third Circuit has not considered this issue, it must be concluded that a reasonable government official would not be on notice" that her actions violated the law. ECF No. 38, at 11. As the Third Circuit explained in *Estate of Lagano*, however, the question is not whether that Court has issued a binding opinion

13

directly on point, but whether the facts as pled fall within the elements of a clearly established legal doctrine. 2014 WL 5155213, at *7.

Here, as to immunity "step one," the Court concludes that the facts alleging Defendant Zimmerlink disseminating an email containing both the identity of and highly sensitive information relating to sexual abuse suffered by Jane Doe 2, a minor, could constitute a deprivation of the constitutional right to privacy that was clearly established as of 2012. As to immunity "step two," the specific information at issue falls within the realm of sexual information previously protected by the Third Circuit, as the Court noted above. *Malleus*, 641 F.3d at 564–65; *C.N.*, 430 F.3d at 179. Consequently, a reasonable official in Defendant Zimmerlink's position would have known that disseminating such information to the press in the manner in which she did could amount to an unconstitutional disclosure of personal matters in these circumstances. While further factual development may prove Ms. Doe's allegations false or otherwise tip the privacy right/government interest balancing test in the other direction, the Court cannot conclude that Defendant Zimmerlink is entitled to the benefit of qualified immunity at this juncture.

### C. Individual Punitive Damages against Defendant Zimmerlink

Punitive damages are available in a federal civil rights action when "'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The facts in the FAC allege that Defendant Zimmerlink forwarded an email of a very sensitive nature to the press, a group clearly outside the collection of government officials involved in arranging a meeting to discuss the issue, without any overriding governmental necessity for doing so. ECF No. 29, at ¶ 23. At this early stage of litigation, the Court must draw all reasonable inferences in favor of Jane Doe 2.

The facts alleged, coupled with the attached email documenting the fact that no one had initially informed Defendant Zimmerlink of the inquiry or investigation, permit the reasonable inference at this stage that Defendant Zimmerlink may have forwarded the sensitive email to the press out of reckless or callous indifference, even if not with an evil motive or intent.[16] The Court will therefore defer ruling on this issue until the record has been developed further. Defendant Zimmerlink's Motion to Dismiss the claim for punitive damages will be denied without prejudice to its later reassertion.

### D. County Liability

In the County of Fayette, as in most counties in the Commonwealth of Pennsylvania, a three-member board of county commissioners carries out the general governing functions of the county. Pa. Stat. Ann., tit. 16, §§ 501(a), 504, 509 (Purdon 2001). The board acts collectively, as only joint action by two (2) of the three (3) commissioners constitutes the quorum necessary to transact business. *Id.* at § 504. Among the board's responsibilities is to "ensure that [CYS] is operated in conformity with applicable Federal, State and local statutes, ordinances and regulations," 55 Pa. Code § 3130.21, meaning it must ensure "the needs of children and youth will be adequately served." Pa. Stat. Ann., tit. 62, § 708 (Purdon 2010).

Although § 1983 liability extends to include local government units, such as counties, such liability may not be imposed absent the infliction of injury by a policy or custom that "may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In other words, plaintiffs must plausibly plead facts amounting to more than a dressed up *respondeat superior* theory for the Court to find a valid municipal liability claim, since "local governments are responsible only for their *own* illegal acts." *Olivieri*

---

[16] For instance, at least one inference that might be drawn in favor of Plaintiff is that Defendant Zimmerlink felt slighted by her exclusion from the initial email chain and retaliated by attempting to publicly disseminate the email in violation of Jane Doe 2's right to privacy.

*v. Cnty. of Bucks*, 811 F. Supp. 2d 1112, 1122 (E.D. Pa. 2011) *aff'd*, 502 F. App'x 184 (3d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original).

The Third Circuit has counseled:

> [T]here are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom. Under *Monell*, a plaintiff shows that a policy existed when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A plaintiff may establish a custom, on the other hand, by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. In other words, custom may be established by proving knowledge of, and acquiescence to, a practice.

*Watson v. Abington Twp.*, 478 F.3d 144, 155–56 (3d Cir. 2007) (internal quotation marks and citations omitted).

Consistent with the two potential avenues for municipal liability, Jane Doe 2 presents the Court with two options for concluding the FAC's allegations of municipal liability sufficient: either the individual commissioners, Zapotosky and Zimmerlink, each had final policy-making authority by virtue of their office in the sense that no superior decision-maker existed to review or curtail their independent conduct; or those individuals, in their collective role as a majority of the county commissioners, jointly constitute a final decision-maker which had a custom of condoning the outside dissemination of private communications. ECF No. 40, at 6–11. With regard to the first argument, the FAC alleges that "both Defendants [Zapotosky and Zimmerlink] possessed unfettered power to disclose county business to third-parties. As such, they were final policy makers as to the dissemination of information, concerning county business they became privy to by virtue of their office." ECF No. 29, at ¶ 33. With regard to the second, the FAC avers that since the "dissemination of information was done by a majority of county commissioners," they were "done pursuant to an official policy, custom, or practice of the County of Fayette not to safe-guard and keep confidential complaints made by citizens to the

16

county commissioners about CYS which contain sensitive and private information about victims of child abuse." *Id.* at ¶ 34.

Beginning with the first contention, The Third Circuit has explained that an individual's conduct may constitute "official policy" when the state actor has "final policy-making authority." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006). If the official is both (1) "responsible for making policy *in the particular area* of municipal business in question" under state law, and (2) the policy-making authority is "*final and unreviewable*," the local government may be held liable for the official's actions. *Id.* at 245 (emphasis in original).

Plaintiff relies on the Third Circuit's opinion in *Hill* in support of her argument that Zapotosky and Zimmerlink individually were final decision-makers whose actions may be imputed to the County.[17] In *Hill*, the Third Circuit addressed a former borough manager's allegations that the mayor consistently harassed the manager to the point that the mayor affected a constructive discharge, forcing the manager to resign. Although no state law gave the mayor the power to constructively discharge the manager, or even to "fire him outright," the court held that the mayor "*had the power to* constructively discharge him," and that the mayor's decision to carry out the constructive discharge was not reviewable by any other person or agency. *Id.* at 246 (emphasis in original). Thus, the court concluded the mayor "had final policy-making authority" to effectuate the constructive discharge. *Id.*

While the opinion provides several quotable phrases for Plaintiff's argument, the Court concludes that *Hill* is fundamentally distinguishable from the present case. That case centered on the conduct of a mayor, who, as an independently elected official, truly has only limited checks on his conduct as a face and voice of the municipality. He need not, by virtue of his office, act with the concurrence of Borough Council. 42 Pa. Cons. Stat. Ann. §§ 46001-A,

---

[17] As explained above, the Court concludes the Complaint fails to allege a constitutional violation by Defendant Zapotosky. Thus, the Court will only address the allegations dealing with Defendant Zimmerlink.

17

46006-A, 46007-A (Purdon 2014). By contrast, any individual County Commissioner is subject to the will of a majority of the Commissioners. The Court therefore concludes that the unilateral actions of a mayor, a lone wolf in terms of electoral borough politics, are fundamentally different from a single action taken by one individual Commissioner vis-à-vis whether that conduct then bears the imprimatur of the County. *Cf. Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 879 (9th Cir. 1987) (noting that one (1) Board of Supervisors member lacked final policy-making authority under California law where only a majority of supervisors could establish law). A single Commissioner is not empowered to act alone on *any* matter under Pennsylvania law, let alone those governing CYS operations. Pa. Stat. Ann., tit. 16, § 504; 55 Pa. Code § 3130.21. It simply cannot be that any action taken by a single Commissioner with no individual decision-making authority can be properly accredited to the County as "County policy." Whether or not Defendant Zimmerlink can individually be held accountable for her actions, the Court concludes that Plaintiff's attempt to impute them to the County is no more than a disguised *respondeat superior* effort.

Jane Doe 2's second theory, that a quorum of county commissioners had a custom of acquiescing to the public dissemination of confidential information regarding allegations of child abuse, is also insufficient to withstand a motion to dismiss. A municipal custom exists when "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson*, 478 F.3d at 155–56 (internal quotation marks and citations omitted). "Custom requires proof of knowledge and acquiescence by the decisionmaker." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

While Plaintiff aptly points out that she "need only allege facts making it plausible that municipal decisionmakers knew of and acquiesced in a well-established practice," ECF 40, at 10, the FAC does not even allege that a majority of the commissioners (who only collectively can

18

constitute a "decisionmaker") knew of Defendant Zimmerlink's email to the press. *See* ECF No. 29, at ¶ 23 (asserting that Defendant Zimmerlink forwarded the sensitive email to the press without the consent or knowledge of Ms. Doe, but not claiming that Defendant Zapotosky or the third Commissioner knew of or acquiesced in that action). It is simply too speculative and conclusory to generically claim that a majority of the commissioners, adequate to jointly act as a final decisionmaker, had a custom of freely and improperly disseminating confidential information to third parties, while pleading no facts that make such a conclusory allegation plausible.

While one application of an unconstitutional custom could, in certain circumstances, be enough to establish liability, such "single incident" liability may not attach when an official, who alone has no policymaking authority, acts unilaterally and without the knowledge or consent of the collective body which has that authority. *See Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) ("A single incident by a lower level employee acting under color of law, however, does not suffice to establish either an official policy or a custom. However, if custom can be established by other means, a single application of the custom suffices to establish that it was done pursuant to official policy and thus to establish the agency's liability."). To hold otherwise would run directly counter to the *Monell* doctrine, and put the County on the hook via a back door application of *respondeat superior*.

Further, just because no policy existed explicitly forbidding such conduct, it does not necessarily follow that the County therefore had an implicit custom or policy of condoning such conduct. The fact that the FAC does not assert that Commissioner Zapotosky (or the third Commissioner) knew of or consented to Commissioner Zimmerlink's alleged dissemination of the confidential email to the press only further supports the Court's conclusion that a majority of the County Commission did not acquiesce in the dissemination of confidential emails such that it

19

would constitute a "well-settled and permanent" custom attributable to the County as a whole. *Watson*, 478 F.3d at 156. Because Plaintiff has failed (for a second time) to plead facts sufficient to establish municipal liability, the Court will grant Defendant Fayette County's Motion to Dismiss the FAC with prejudice.

## IV. **CONCLUSION**

For the foregoing reasons, as to the County of Fayette and Defendant Zapotosky, the Court will grant the Motion to Dismiss all claims with prejudice. With respect to Defendant Zimmerlink, the Court will deny the Motion to Dismiss without prejudice to re-assertion of relevant arguments after the conclusion of fact discovery.

An appropriate Order will issue.

                                                                                Mark R. Hornak
                                                                                United States District Judge

Dated: October 30, 2014

cc: All counsel of record